IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:08CR489-1 |
| | ) | 1:09CR159-1 |
| TAJ MAURICE PITTMAN | ) | |

**MEMORANDUM ORDER**

Before the court is Defendant Taj Maurice Pittman's motion, pursuant to Federal Rule of Civil Procedure 60(b), to vacate this court's December 21, 2021 order[1] permitting the Government to obtain the funds held in his inmate trust account as payment toward the criminal monetary penalties imposed in this case. (Doc. 133 in 1:08CR489-1.) The Government filed a response (Doc. 134), and Pittman filed a reply (Doc. 136).[2] Thereafter, Pittman filed an amendment and supplement to his reply. (Docs. 137, 138.) For the reasons set forth below, Pittman's motion to vacate will be denied.

I.  **BACKGROUND**

On January 7, 2010, following a jury trial, Pittman was convicted of multiple robberies, some armed. (Doc. 49.) He was sentenced to 609 months of imprisonment and ordered to pay

---

[1] Pittman filed his motion in both captioned cases (see Doc. 84 in case 1:09CR159-1), but for simplicity the court will refer to docket entries in case 1:08CR489-1.

[2] On February 7, Pittman sought an extension of time to file a reply to the Government's response. (Doc. 135 in 1:08CR489-1; Doc. 86 in 1:09CR159-1.) Because the court considers Pittman's subsequently filed reply and supplements, the request is deemed moot.

restitution of $19,835.73. (Doc. 71.) His convictions were affirmed on appeal. (Doc. 86.)

On October 13, 2021, the Government moved for authorization of payment, arguing that 18 U.S.C. §§ 3613(a) and 3664(n) "constitute[] a lien in favor of the Government against all of the defendant's property and rights to property" and "require[] that the defendant's resources received from any source during his term of incarceration must be applied to his outstanding restitution obligation," and that "[t]he receipt of more than $3,001.14 in funds by the defendant here constitutes a material change in his 'economic circumstances.'" (Doc. 130 ¶¶ 4, 5, 8.) On December 21, 2021, after receiving no response from Pittman, this court entered an order granting the Government's motion and authorized the Bureau of Prisons to pay to the Clerk of Court $3,001.14 held in Pittman's trust account. (Doc. 131.) On January 3, Pittman untimely filed a response, arguing that "the funds that the government seeks to take is legally joint property of my attorney-in-fact, Josephine Cade, and I." (Doc. 132.)

Pittman now argues that he received the Government's motion, along with the attached proposed order, on October 13, 2021, and that he "neglect[ed] to timely respond." (Doc. 133.) He requests that the court vacate its order and allow him twenty-one days to respond to the Government's motion to authorize payment from his inmate trust account. He contends that by including a copy of the

2

proposed order in the documents served on him, "the government had represented that the court had granted it's [sic] motion the same day that the government had filed it."  (Id.)  Although he acknowledges that the order was unsigned, he claims that he "believe[d] that it was still a valid order" and "believed that either, [he] had no right to respond to the motion . . . or the court had denied [him] the right."  (Id.)  He argues that the Government sent him a copy of the proposed order "with intentions to deceive [him] into believing the court had granted the motion." (Id.)  Additionally, he claims he was prejudiced by the mailing of the Government's proposed order and should be "excuse[d] [from his] neglect to timely respond."  (Id.)

The Government responds that it served a copy of the proposed order not to imply that it had been entered or to misrepresent anything, but rather to comply with the Federal Rules of Civil Procedure, which require that documents filed be served on opposing party, and section L(2)(b) of this district's Electronic Case Filing Administrative Policies and Procedures Manual.  (Doc. 134 at 3-4.)

## II. ANALYSIS

### A. Legal Standard

As a preliminary matter, Pittman moves pursuant to Rule 60(b)(1), (3), & (6) but disclaiming the other grounds specified in the Rule.  Pittman contends that relief is justified due to his

3

"excusable negligence" and "fraud and misrepresentation" by the Government. (Doc. 133.) He also argues that the court should vacate its prior order, because his "attorney-in-fact . . . had a right to assert an interest in the funds that the government [sought]." (Id.; Doc. 138 (arguing that he "transferred . . . all of [his] property and rights to property" to his "agent" Josephine Cade).)

While Pittman moves pursuant to Federal Rule of Civil Procedure 60(b), the Government does not address the application of it or any other civil rule in this context. Because motions for inmate trust funds to pay restitution are not bound by the same issues of finality attendant to criminal judgments, some courts have applied the civil standard to motions for reconsideration of decisions authorizing the turnover of inmate funds. See, e.g., United States v. Walton, No. CR 09-157, 2018 WL 466109, at *1 (E.D. La. Jan. 18, 2018) (applying Rule 60(b) standard to inmate's motion for reconsideration of the court's previous order authorizing the Bureau of Prisons to transfer all funds held in his inmate trust account to the Clerk of Court); United States v. Howell, No. 510CR00011RLVDCK1, 2017 WL 3301358, at *3 (W.D.N.C. Aug. 2, 2017) (same, applying Rule 59(e)); United States v. Busack, No. 5:14CR54, 2016 WL 3039886, at *2 (N.D.W. Va. May 27, 2016), aff'd, 670 F. App'x 810 (4th Cir. 2016) (same). It is clear that the court's order is final for purposes of the civil

4

rules.  See United States v. Elwood, No. CR-11-79-R, 2018 WL 1884821 (W.D. Okla. Apr. 19, 2018), aff'd, 757 F. App'x 731 (10th Cir. 2018).  Therefore, assuming without deciding that the more forgiving civil standard provides guidance here, the court applies it to Pittman's arguments.

However, while Pittman moves pursuant to Rule 60(b), the Fourth Circuit has explained that if a post-judgment motion is filed within 28 days of the order and "and calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e), however it may be formally styled."  MLC Auto., LLC v. Town of Southern Pines, 532 F.3d 269, 277 (4th Cir. 2008) (quoting Dove v. CODESCO, 569 F.2d 807, 809 (4th Cir. 1978)).  A motion to alter or amend a judgment under Rule 59(e) must be filed "no later than 28 days after the entry of judgment."  Fed. R. Civ. P. 59(e).  Pittman mailed his motion 23 days after the court's order.  Thus, applying the prisoner "mailbox" rule, his post-judgment motion is properly construed as a timely-filed Rule 59(e) motion.  See Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that, under Rule 4(a)(1), *pro se* prisoners' notices of appeal are "filed" with the court at the moment of delivery to prison authorities).

Pursuant to Rule 59(e), a court may alter or amend a final judgment for the following reasons: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error

5

of law or prevent manifest injustice."  Pacific Insurance Co. v. American National Fire Insurance Co., 148 F.3d 396, 403 (4th Cir. 1998); see Fed. R. Civ. P. 59(e).  Rule 59(e), therefore, "permits a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings."  Pacific Insurance Co., 148 F.3d at 403 (citation omitted).  The moving party bears the burden of establishing one of the three grounds for reconsideration.  Loren Data Corp. v. GXS, Inc., 501 F. App'x 275, 285 (4th Cir. 2012) (unpublished).[3] While "[t]he district court has considerable discretion in deciding whether to modify or amend a judgment" under Rule 59(e), Gagliano v. Reliance Standard Life Ins. Co., 547 F.3d 230, 241 n.8 (4th Cir. 2008), the Fourth Circuit has cautioned that "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly."  Pacific Insurance Co., 148 F.3d at 403 (citation omitted).  Litigants may not use the motion "to raise arguments which could have been raised prior to the issuance of the judgment, nor . . . to argue a case under a novel legal theory that the party had the ability to address in the first place."  Id.  While the court's authority to reconsider orders "may be tempered at times by concerns of finality and judicial economy," "[t]he ultimate responsibility of the federal

---

[3] Unpublished opinions of the Fourth Circuit are not precedential and are cited as persuasive but not controlling authority.

6

courts . . . is to reach the correct judgment under law." American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515–16 (4th Cir. 2003) (holding that "the district court abused its discretion in denying the [motion for reconsideration]").

**B.   Attachment of Inmate Funds**

Pittman argues that his "attorney-in-fact" has a "right to assert an interest in the funds" the Government applied toward his restitution.  (Doc. 133.)  He also argues, without citing any authority, that the Government's "lien would not be valid" against the funds in his inmate trust account as "the property would belong to [his] agent and not to [him]."  (Doc. 138)

There is a consensus among district courts in the Fourth Circuit that 18 U.S.C. § 3613 permits the Government to take funds in an inmate's trust account to satisfy criminal obligations. See United States v. Corbett, No. 2:10-CR-00015-1, 2021 WL 744161, at *3 (S.D.W. Va. Feb. 25, 2021) (collecting cases).  Section 3613 provides that "an order of restitution . . . is a lien in favor of the United States on all property and rights to property of the person fined . . . ."  18 U.S.C. § 3613(c).  Through this lien, "the government 'steps into the [defendant]'s shoes' and acquires 'whatever rights the [defendant] himself possesses.'" United States v. Frank, 8 F.4th 320, 331 (4th Cir. 2021) (quoting United States v. National Bank of Commerce, 472 U.S. 713, 725 (1985)). Because property includes cash, and cash does not fall within any

7

exemption that a defendant may claim in a criminal case, 18 U.S.C. § 3613(a)(1) (listing exemptions), a "defendant cannot properly claim that the funds held in his inmate trust account are exempt from payment of his outstanding fine amount." United States v. Winebush, No. CR 1:10-00185-01, 2020 WL 2507677, at *2 (S.D.W. Va. May 15, 2020).

Additionally, the Mandatory Victims Restitution Act authorizes courts to "adjust the payment schedule, or require immediate payment in full" upon notification of a "material change in the defendant's economic circumstances," from the United States or from the victim, and requires courts to apply "substantial resources" a defendant-inmate receives from any source during a period of incarceration toward restitution owed. § 3664(k), (n). Several courts have held that the accumulation of over $1,000 constitutes a material change affecting a defendant-inmate's ability to pay restitution under § 3664(k) or substantial resources under § 3664(n). See, e.g., United States v. Wade, No. 8:04CR462, 2022 WL 170643, at *4 (D. Neb. Jan. 19, 2022); United States v. Walker, No. 1:11-CR-090, 2021 WL 4005988, at *1 (D.N.D. Sept. 2, 2021); United States v. Davis, No. 3:14-CR-47 JD, 2021 WL 2678765, at *2 (N.D. Ind. June 30, 2021); see also United States v. Kieffer, No. 3:14-CR-30051-NJR-1, 2021 WL 1758815, at *1 (S.D. Ill. May 4, 2021) (holding that the defendant-inmate's receipt of approximately $1,800 from an economic stimulus payment does not

8

constitute a material change in economic circumstances under § 3664(k), but that it does constitute substantial resources under § 3664(n)). None of the statutory exemptions is applicable here. See 18 U.S.C. § 3613(a)(1).

Therefore, while a prisoner has "a protected property interest in his prison trust account," Burks v. Pate, 119 F. App'x 447, 450 (4th Cir. 2005) (unpublished), the Government is entitled to an order authorizing the Bureau of Prisons to pay the Clerk of Court with funds from the trust account to be applied to a proper obligation, such as payment of restitution. Pittman's judgment provides that "[n]othing herein shall prohibit the United States Attorney from pursuing collection of outstanding criminal monetary penalties," and Pittman's restitution assessment was ordered "due immediately" at sentencing. (Doc. 71 at 6.) See United States v. Hill, No. 4:13-CR-28-BR, 2017 WL 2964016, at *2 (E.D.N.C. May 24, 2017), aff'd, 706 F. App'x 120 (4th Cir. 2017). His restitution obligation is therefore a proper ground for payment.

To be sure, there is no indication that the Government is necessarily entitled to the complete balance of an inmate's trust account for payment of an inmate's restitution debt. Some courts have permitted the inmate to retain a nominal balance to purchase basic necessities. See, e.g., Winebush, 2020 WL 2507677 at *2 (noting the defendant should retain $100 in his trust account, but

9

otherwise ordering the BOP to turn over all funds to the Clerk of Court); Kieffer, 2021 WL 1758815 at *1 (noting the defendant "would not be left indigent if his funds are applied toward his criminal monetary obligations"); United States v. Custer, No. 115CR00033HABSLC, 2021 WL 4786215, at *1 (N.D. Ind. Oct. 13, 2021) (granting a motion for an order for all funds in an inmate trust account "minus $150 to be reserved for [the inmate]'s miscellaneous expenses"); Walker, 2021 WL 4005988 at *1 (same, minus "$75 . . . to make telephone calls"). However, other courts have allowed the Government to obtain the full balance, as did this court did in light of the large balance and the unpaid restitution. See, e.g., United States v. Zuniga, No. 1:18-CR-00347-BLW, 2021 WL 6063664 (D. Idaho Dec. 22, 2021); United States v. Brown, No. 4:17-CR-51 RLW, 2021 WL 1945855 (E.D. Mo. May 14, 2021); United States v. Kenney, No. CR 1:17-00195-004, 2020 WL 1934967 (S.D.W. Va. Apr. 22, 2020); United States v. Wahba, No. 8:14-CR-179-T-17EAJ, 2016 WL 4472966 (M.D. Fla. Aug. 23, 2016).

In the future, should Pittman find himself unable to provide for his basic needs, he should indicate his financial needs with some specificity, including any reference to voluntary payments of his restitution balance, in order for the court to consider permitting him to retain a balance for necessities. See United States v. Fischer, No. CR 3:17-374, 2021 WL 120842, at *3 (M.D. Pa. Jan. 13, 2021) (declining to grant an order for restitution

10

payment from an inmate trust account where "the defendant, to date, has shown a laudatory determination to make his payments from the money he is earning from his job").

Finally, there is Pittman's two-fold argument on the merits. First, he contends that by virtue of granting power of attorney to Josephine Cade to act over his affairs, his inmate trust account was not "property belonging to [Pittman] subject to the government[']s lien because it was money that [his] agent deposited into [his] account to make and secure [his] IRFP payments here at the prison." (Doc. 138 at 1.) Second, and alternatively, Pittman argues that as attorney-in-fact Ms. Cade "had an interest in whatever property that could be considered mines [sic]" because he transferred it to his attorney-in-fact. (Id.) Pittman concludes that the funds therefore "belong to my agent and not to me." (Id.) Both arguments are meritless.

A prisoner cannot purport to unilaterally create joint interests in his inmate trust account, particularly as a ploy to put the funds out of reach of the Government to collect payment of court-ordered restitution. A Bureau of Prisons facility is not an independent financial institution. Moreover, the appointment of an attorney-in-fact does no more than grant that agent the right to act on behalf of the grantor, usually in financial or personal matters. (See id. at 2 (Pittman conferred upon Ms. Cade "the power to act on [his] behalf and in [his] stead, as if [Pittman] were

11

present").)  It does not grant the agent independent rights of her own.  See Attorney, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[O]ne who is designated to transact business for another; a legal agent – Also termed attorney-in-fact." (emphasis added)); CMFG Life Insurance Co. v. Schell, GJH-13-3032, 2016 WL 393858, at *3 (D. Md. Jan. 29, 2016) ("A Power of Attorney is a written document by which one party, as principal, appoints another as agent (attorney in fact) and confers upon the latter the authority to perform certain specified acts or kinds of acts on behalf of the principal." (citation omitted)).  Both of Pittman's arguments are frivolous and certainly fail to constitute "manifest injustice" to support altering this court's order.

Here, Pittman has failed to show that the Government should have been prevented from taking funds in his inmate trust account to satisfy his criminal obligations.  Thus, upon his motion for reconsideration of the merits of his response, the court stands by its prior order.

### C. Procedural Due Process Claim

Pittman argues that the court's order should be vacated under Rule 60(b)(1), (3), & (6)[4] and his response should be considered on the merits because he "reasonably believed that either, [he] had no right to respond . . . or the court had denied" that right.

---

[4] Pittman's Rule 60(b)(6) claim reiterates the same arguments set forth in his original motion to vacate this court's order. (Doc. 137.)

12

(Doc. 133.) He also argues that "the government had represented that the Court had granted its motion the same day that the government had filed it." (Id.) He further argues that the Government's actions constitute a "Procedural Due Process Violation" because he was not "given a fair opportunity to respond" before the Government "deprived" him of his property. (Doc. 137.) For the reasons noted above, the court will construe his argument as one to "correct a clear error of law or prevent manifest injustice" pursuant to Rule 59(e). See Pacific Insurance Co., 148 F.3d at 403.

This court's Local Rule 7.3(f) requires a party to "file a response, including brief, within 21 days after service of the motion." When a respondent fails to file a response to a motion, "the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." Local Rule 7.3(k). A party's status as a *pro se* litigant or prisoner does not excuse his inaction. As the Supreme Court observed in McNeil v. United States, "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." 508 U.S. 106, 113 (1993). Accordingly, "pro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines." Jones v. Phipps, 39 F.3d 158, 163 (7th Cir. 1994); see Local Rule 11.1(a) ("[T]his

13

Court's Local Rules apply to individuals appearing *pro se*.").[5]

Here, Pittman had more than ample time to file a response or request an extension of time. He was served with the motion at his inmate address, and the court did not issue its order until December 21, 2021, over two months after the Government's motion was filed. Pittman's failure to respond and his unfounded belief that he lacked the right respond are not excused by his *pro se* status. This argument is meritless.

Further, Pittman's argument that by including a copy of the proposed order in the documents it served on him, the government somehow "represented that the Court had granted its motion the same day that the government had filed it" (Doc. 133) similarly lacks merit. As the Government asserts, it served the proposed order because it was an attachment to its motion and thus required by this court's Electronic Case Filing Administration Policies and Procedures Manual and Federal Rule of Civil Procedure 5. Pittman's claim that he did not have a copy of the court's administrative policy and procedures manual is of no moment, as it is available online.[6]

---

[5] The Fourth Circuit only requires special notice to pro se parties when deciding dispositive motions, such as a motion for summary judgment. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) ("Assuredly, a pro se plaintiff is entitled to such a reasonable safeguard when confronted with the possibility of summary disposition of his case.").

[6] The Electronic Case Filing Administrative Policies and Procedures Manual for the Middle District of North Carolina is readily available

Finally, Pittman argues that the Government's actions constitute a "Procedural Due Process Violation" because he was not given a "fair opportunity to respond" before the Government "deprived" him of his property. (Doc. 137.) While this argument fails as a factual matter for the reasons noted, the Fourth Circuit has not addressed the level of procedural due process owed to an inmate subject to a restitution-based turnover order. But cf. Hanvey v. Blankenship, 631 F.2d 296, 297 (4th Cir. 1980) ("When statutory authority permits a forfeiture . . . no constitutional violation occurs."). However, the Fifth Circuit addressed the issue in United States v. Rand, where it explained that the "central question [was] whether the response would have affected the outcome of the district court's decision." 924 F.3d 140, 144-45 (5th Cir. 2019) (per curiam). Under that standard, the court held that the district court did not abuse its discretion by granting the Government's motion three days after it was filed and before the defendant responded. Id. Here, as in Rand, Pittman's response would not have affected the outcome of the court's order.

For these reasons, Pittman's claim of a due process violation lacks merit.

## III. CONCLUSION

For the above reasons, therefore,

---

on the court's website (titled "Administrative Policies") at https://www.ncmd.uscourts.gov/sites/ncmd/files/ecfprocman.pdf.

IT IS ORDERED that Pittman's motion to vacate, as supplemented (Docs. 133, 136-138 in 1:08CR489-1; Docs. 84, 87-89 in 1:09CR159-1), is DENIED.

IT IS FURTHER ORDERED that Pittman's motion for extension of time to file a reply (Doc. 135 in 1:08CR489-1; Doc. 86 in 1:09CR159-1) is deemed moot as the court fully considered all of his filings.

April 20, 2022

/s/   Thomas D. Schroeder
United States District Judge